After the argument,' Chancellor James delivered the decree of the Court.
George Tunno bought 62 negro slaves of the defendant and gave him a bond and mortgage for them.
The debt being unpaid, defendant threatened to enforce his mortgage. George Tunno became anxious to make sale of some of the negroes, to raise money to pay the debt, and made application to the complainant to become the purchaser of some of them. That complainant called on defendant for the purpose of communicating with him on the subject. But defendant was not at home. Defendant af-terwards wrote to complainant on the subject. And in two days after, defendant wrote to complainant, requesting him to commit to paper, the number and value of the ne-groes, the terms of payment, and reasonable manner in /Which complainant expected to accomplish the latter. And the defendant also expressed the most unlimited confidence in complainant’s compleating the promises made. Complainant returned an answer in the manner requested by defendant, and conceiving the matter sanctioned by defendant, he concluded .the bargain, by which he bound himself to pay 27751. for 37 of the negroes, most of whom were delivered to complainant by G. Tunno, with the assent of the defendant, and part of them by defendant himself. Afterwards the remainder of the negroes were 'sold below their value (defendant not attending the sale) under the mortgage, so that a large sum remains due on. G. Tunno’s original purchase and mortgage. Complainant has paid almost the whole of the amount of his purchase to defendant. But defendant insists that the negroes sold to complainant are liable to make good the deficiency *196 due by Tunno, on the mortgage; and he threatens to enforce the mortgage against them. The bill prays that the neg.roes purchased by complainant may be discharged from the lien, and that he may have a complete title.
The deferidant admits that G. Tunno was indebted to him as stated, but swears that he told complainant previous to the purchase of the negroes, that he would not relinquish his lien on the negroes, until the whole debt was paid; and thinks that complainant has secured himself from the effects of the mortgage, by an indemnity from George Tunno’s brothers. That defendant did. not deliver any of the negroes to the complainant, and submits that on a fair construction of the letters produced, he (defendant) cannot be considered as a party to the contract ; but that the same was made by complainant with George Tunno.
Mr. Price proved that the first mover towards the contract was the defendant, who was anxious to conclude it. That complainant is particular in his bargains, and would not have concluded this if he had thought the property would remain subject to the lien, after he had paid his purchase. That the price of the negroes was 1 Si. per head higher than the mortgagor had given for them. That complainant has paid the whole of the purchase money except 47A The letters were produced, as above stated, also a letter of 21st April, 1796, from defendant to complainant, wherein he makes some arrangements relative to the specified negroes which complainant ivas to receive. Complainant did receive the negroes and made payments on his purchase.
The court considered the bargain compleat at this stage, and would not consider the subsequent letters of defendant to T. Tunno, nor the receipts expressing the payments to be on account of George Tunno, to bear upon the question, as this would be allowing defendant to new model and colour the transaction so as to suit his own interests. The court upon the whole of the evidence, was satisfied that the application first came from the defendant to com- *197 pjainant. That defendant was anxious for the' sale to the complainant, whom he considered a purchaser in whom he could place unlimited confidence. What then is to be presumed by this unlimited confidence ? Certainly one without restriction, or any other pledge to secure the property than that required by the letter above stated, (to wit: that complainant would commit to paper the number and value of the negroes, the terms of payment, &c.) the object of defendant seems to have been to get the contract reduced to writing, so as to mate it binding on the parties. Complainant did so write, and defendant was satisfied. Here then the contract was complete ; and the privity of contract between complainant and defendant is established. It is acknowledged by defendants counsel, thatthis privity is the principal criterion by which to judge whether this contract was a separate and independant one of that made with George Tunno.
The court thinks the privity is complete in all its parts. As soon as G. Tunno assented to deliver up the negroes, it appears that he was no more consulted, and every step. taken was between complainant and defendant.
Complainant thinks himself released from the operation of the mortgage, and Mr. Price proves that complainant acted on that principle. Defendant swears he never meant to release the negroes till the whole debt (from Tunno) was paid. The letters must decide this point in this contradiction; and the court is of opinion that whether defendant meant to release the negroes purchased by complainant from the mortgage or not, he has used expressions which the court must consider a release. It is said that the defendant’s intent was never to release the negroes till the whole amount of George Tunno’s purchase was paid, came to complainant’s knowledge. This would have been very important if it had come to complainant’s knowledge before the completion of the contract: but it seems to have been after the contract was completed. Another circumstance of weight is, that defendant might have got more for the remainder ofthenegroes, (in Tunno’s hands) andreceiv- *198 ed full payment of the balance by more equitable means than a rigid adherence to the enforcement of the mortgage by the sheriff for cash; at which sale he did not attend, but allowed them to go off low. Mr. A. Tirano offered his note for the balance of debt, with an endorser at 90 days, if he would release the negroes — this was refused.
Mr. Pexngle for complainant.
Messrs. Ward, Drayton and Simons for defendant.
The conclusive consideration with the court is, that the complainant bought the negroes with the consent of the defendant for a full price, (higher than the first sale) and complainant has paid it all except 47/.
It is common for sellers to warrant the property on sales for full value. Here where defendant was the real seller for full price, (which he has received) there is no good reason why the seller should be allowed to disturb the pro - perty.
Decreed, that on complainant’s payingthe balance due by him on his purchase, (and it is referred to the master to ascertain it) the defendant be perpetually enjoined from disturbing the complainant under the mortgage.
Defendant to pay costs of suit.